## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

ANDRES WILLIAM HOWARD,   )
                               )
      Plaintiff,           )
                               )
v.                        )          CV423-086
                               )
CHATHAM COUNTY, *et al.*,     )
                               )
      Defendants.       )

## ORDER AND REPORT AND RECOMMENDATION

*Pro se* plaintiff Andres William Howard has filed this 42 U.S.C. § 1983 case alleging various unconstitutional conditions of his confinement at Chatham County Detention Center. *See* doc. 18. He has also moved for reconsideration of the Court's prior order concerning his access to the prison's law library and photocopying facilities. *See* doc. 17. The Court must screen the Amended Complaint pursuant to 28 U.S.C. § 1915A. Additionally, for the reasons explained below, Howard's Motion for Reconsideration is **DENIED**. Doc. 17.

Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the

Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

Howard alleges that he is a pretrial detainee incarcerated at Chatham County Detention Center. *See* doc. 18 at 4. His Amended Complaint includes a detailed factual recitation of grievances he filed with the jail and the responses he received.[1] *See, e.g., id.* at 13-14. Charitably construed, Howard's Amended Complaint alleges three violations. First, he objects that the Commissary at the jail, operated by defendant Oasis Commissary Services, is selling products individually that are not labeled for individual sale. *See* doc. 18 at 13-17. Second, he objects that a medical provider at the jail, defendant Vlasenko, "order[ed]" personal care items, including body wash, shampoo, conditioner, and skin lotion, for his "skin irritation and dry scalp." *Id.* at 18. Since Howard was not indigent, he was told—it's not clear by whom—

---

[1] Since the details of the grievance procedure are not relevant to the analysis below, they have largely been omitted from this factual summary. However, the Court has considered the factual allegations in the reported grievances as incorporated into the Amended Complaint.

to purchase the items from the commissary. *Id.* However, he alleges that the commissary does not sell the items and that they are only available "on medical." *Id.* On or about May 1, 2023, Howard alleges that Vlasenko prescribed medication, apparently for his skin issues. *Id.* at 29-30. Finally, Howard objects that jail staff opens "legal mail," copies it, provides the inmate with the copy, and stores the original with the inmate's property. *See id.* at 31-32. He seeks monetary damages of $6,700,000.00 for all of the violations. *Id.* at 6.

## I.    Improper Defendants

Howard names Chatham County Detention Center as a defendant in this case. *See, e.g.,* doc. 18 at 2. However, as this Court has repeatedly explained, "the Chatham County Detention Center is not an entity subject to suit." *Meyers v. Chatham Cnty. Det. Ctr.*, 2022 WL 1215640, at *1 (S.D. Ga. Apr. 25, 2022). Chatham County Detention Center should, therefore, be **DISMISSED** from this case. Howard also names Oasis Commissary Services as a defendant. *See, e.g.,* doc. 18 at 3. Courts have recognized that private corporations who contract to provide commissary goods to prisoners are not state actors, subject to suit under § 1983. *See, e.g., McGill v. Riverbend Corr. Facility*, 2023 WL 2061168,

at *4 (M.D. Ga. Feb. 16, 2023); *Reese v. Union Supply Grp.*, 2021 WL 3928833, at *3 (S.D. Ala. Aug. 5, 2021). Oasis, therefore, should also be **DISMISSED** from this case.

## II. Commissary

Howard's allegations concerning the labeling of goods at the jail's commissary do not state any actionable claim. The United States District Court for the Middle District of Florida recently dismissed an apparently identical claim "that the commissary has sold products marked 'not for individual resale[,]'" as frivolous. *See Hayes v. TSG Commissary*, 2022 WL 1104117, at *1 (M.D. Fla. April 13, 2022) (citing *Neitzke v. Williams*, 490 U.S. 319 325 (1989) (claim is "frivolous where it lacks an arguable basis in law or fact.")). The Middle District of Florida explained that "[i]t is well-settled that prisoners have no constitutional right of access to or use of a jail or prison commissary. [Cit.] Without even a constitutional right to the use of the jail commissary, Plaintiff certainly cannot claim any constitutional right to purchase specific products at the commissary, such as products with certain types of labels." *Id.* (citations omitted). Howard's claims arising from allegations that products at the jail's commissary are improperly labeled should, therefore, be **DISMISSED** as

frivolous and for failing to state a claim.  Since the commissary claim is the only claim plausibly asserted against defendants Oasis Commissary Services and its employee, Derek Hamm, those defendants should be **DISMISSED**.

### III.   Personal-Care Items / Medical Care

Howard characterizes the difficulties he faced in acquiring personal-care items and the resulting skin conditions as denying him "medical treatment."  *See, e.g.,* doc. 18 at 6.  As explained below, that characterization is not obvious.  Even charitably construed, it appears that the facts Howard alleges cannot support any constitutional medical care claim because, to the extent that his skin conditions did not require prescription treatment, they were not sufficiently serious, and once they became serious, he alleges that treatment was provided

To offend the Eighth Amendment,[2] a government official must display "deliberate indifference to the serious medical needs of prisoners . . . " *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  This requires that (1)

---

[2] As a pretrial detainee, Howard's medical-care claim is technically governed by the Fourteenth Amendment, not the Eighth.  *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).  "However, the standards under the Fourteenth Amendment are identical to those under the Eighth."  *Id.* (citation omitted); *see also Thomas v. Bradshaw*, 2022 WL 333244, at *4 (11th Cir. Feb. 4, 2022) (same).

the prisoner suffered a sufficiently serious medical need; (2) to which the defendants were deliberately indifferent; (3) resulting in an injury. *Goebert*, 510 F.3d at 1326.  Whether a serious medical need existed is an objective standard. *Milton v. Turner*, 445 F. App'x 159, 161-62 (11th Cir. 2011).  However, whether defendants were deliberately indifferent is subjective and each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 33 F.3d 1325, 1331 (11th Cir. 2008).  To allege deliberate indifference, a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Youmans v. Gagnon*, 62 F.3d 557, 564 (11th Cir. 2010).

First, Howard's general allegations of skin irritation do not clearly allege a "serious medical need." "Courts have consistently held that skin conditions without other symptoms do not qualify as serious medical needs." *Sullivan v. Cochran*, 2015 WL 9659680, at *4 (S.D. Ala. Nov. 25, 2015) (collecting cases); *see also Ellison v. New Jersey State Prison Med. Dept.*, 2023 WL 363044, at *4 (D.N.J. Jan. 23, 2023).  Moreover, courts have held that requiring payment for medical care is not, in itself, unconstitutional. *See, e.g., Harper v. Tritt*, 726 F. App'x 101, 103 (3d Cir.

2018). In the absence of an alleged serious medical need, the fact that various defendants refused to provide the personal care items Howard demanded does not implicate his constitutional rights.

Although Howard's uncomfortable skin condition does not appear to have been a "serious medical need" at all times relevant to his claims, those conditions may have become serious at some point. "[A] serious medical need is considered one that has been diagnosed by a physician as mandating treatment . . . ." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). However, even supposing that Howard's skin issues became serious at some point, his Amended Complaint shows that jail staff was not deliberately indifferent. One of the grievances he has reproduced indicates that, in response to his complaints about his skin conditions, defendant LPN Harn, explained: "You do not have a chronic condition[ ] and [the personal care] items have never been order[ed] for you . . . ." Doc. 18 at 27. On or about May 1, 2023, Howard expressly alleges that Vlasekno prescribed him what appears to be a topical cream for his skin conditions. *Id.* at 29-30. Those allegations are inconsistent with any deliberate indifference claim.

As the Eleventh Circuit has explained:

> [a] prisoner brining a deliberate-indifference claim has a steep
> hill to climb.  We have held, for instance, that the Constitution
> doesn't require that the medical care provided to prisoners be
> perfect, the best obtainable, or even very good.  [Cit.]  Rather,
> medical treatment violates the Eighth Amendment only when
> it is so grossly incompetent, inadequate, or excessive as to
> shock the conscience or to be intolerable to fundamental
> fairness.  [Cit.]  We have also emphasized—as have our sister
> circuits—that a simple difference in medical opinion between
> the prison's medical staff and the inmate as to the latter's
> diagnosis or course of treatment fails to support a claim of
> cruel and unusual punishment.  [Cit.]

*Keohane v. Florida Dept. of Corrs. Sec'y*, 952 F.3d 1257, 1266 (11th Cir.

2020) (internal quotation marks, alterations, and citations omitted).

Given the high standard for deliberate indifference, "when a prison

inmate has received medical care, courts hesitate to find an Eighth

Amendment violation." *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir.

1989) (citation omitted).  Evan assuming that the conditions Howard

alleges were, or became, serious medical needs, his dispute about

whether the personal care items available to him were appropriate to

address those needs is the kind of disagreement that is not subject to

constitutional scrutiny.  His claim should, therefore, be **DISMISSED**.

Since the claim is the only one that implicates defendants Correct Health,

Harn, Wood, and Vlasenko, they should be **DISMISSED**.

8

## IV. Legal Mail

Howard alleges that "Chatham County allows the Chatham County Detention [Center] not only copy our (<u>my</u>) mail but[ ] to keep the original and separate it from our (my) site [sic] and belonging."  Doc. 18 at 31. "Legal mail is opened with a mail opener along top seam removed, copied th[e]n copy is (<u>was</u>) given to me, original was replaced in original and a small piece of scotch tape place of top seam." *Id.* Howard alleges several instances when his "legal mail," was subject to the described procedure. *Id.* at 32.  He reproduces grievances and the responses he received to those grievances concerning the policy. *Id.* at 33-41.  Those grievances make it clear that at least some of the documents Howard refers to as "legal mail" are service copies of documents from this Court. *See id.* at 35-36.

Howard's allegations concerning the treatment of his mail implicate two potential constitutional issues, his right of access to the courts, and his right to free speech under the First Amendment.  The Eleventh Circuit has held that "the right to send and receive mail exists under the First Amendment," and violations of that right may be vindicated by nominal damages, even "absent any actual injury." *Al-Amin v. Smith*,

511 F.3d 1317, 1333, 1335 (11th Cir. 2008).  A viable access-to-courts claim requires an "actual injury," in the form of evidence that "a nonfrivolous[ ] post-conviction claim or civil rights action," was "impeded."  *Id.* at 1332-33.  "[I]n other words, the plaintiff[ ] must demonstrate that [he] had a legitimate claim that [he was] unable to pursue due to the prison's restrictions." *Bass v. Perrin*, 170 F.3d 1312, 1320 n. 13 (11th Cir. 1999).  Since Howard does not allege his pursuit of any nonfrivolous case was impeded by the challenged policy, he does not allege an access-to-courts claim.  The Court, therefore, considers whether his general right to send and receive mail has been violated.

The United States Court of Appeals for the Third Circuit has recently explained that a jail or prison's "policy of opening an inmate's legal mail *outside his or her presence* violates the First Amendment, regardless of . . . good-faith protestations that it does not, and will not, read the contents of the communications." *Nifas v. Belles*, 2022 WL 336993, at *2 (3d Cir. Feb. 4, 2022) (internal quotation marks and citations omitted) (emphasis added).  However, allegations that defendants "kept [plaintiff's] legal documents" fail in the absence of allegations or evidence that any defendant opened legal mail outside the

10

inmate's presence. *Id.* The Eleventh Circuit has also recognized that opening legal mail outside an inmate's presence violates the First Amendment. *Al-Amin*, 511 F.3d at 1334. The principle is widely accepted among the Courts of Appeals. *See, e.g., Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1210 (9th Cir. 2017) ("In addition to the Third and Eleventh Circuits, the Second, Sixth, and Tenth Circuits have recognized that the opening of legal mail outside of a prisoner's presence implicates First Amendment rights." (citations omitted)).

The First Amendment right recognized in *Al-Amin* is not as expansive as it might first appear. "Legal mail," as used by the Eleventh Circuit clearly refers to "attorney mail." *See Al-Amin,* 511 F.3d at 1334 ("Thus, we conclude that Al-Amin has a First Amendment free speech right *to communicate with his attorneys* by mail . . . ." (emphasis added)). The protections afforded to attorney communications does not extend to all "legal" documents generally. "[U]nder federal law, filings in [an] action, be they court orders or documents filed by [parties], are a matter of public record and are not confidential legal mail."[3] *Zamaro v. Moonga*,

---

[3] Courts have recognized that, for purposes of an access-to-courts claim, court mail is "legal mail." *See, e.g., Ford v. Coleman*, 2015 WL 3404191, at *6 (M.D. Fla. May 26, 2015) (citing *Taylor v. Sterrett*, 532 F.2d 462, 475-76 (5th Cir. 1976) ("In this

2009 WL 5197851, at *2 (E.D. Cal. Dec. 22, 2009) (citing *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996)); *see also Vaughn v. Schoapt*, 2007 WL 3274189, at *1 (W.D. Pa. Nov. 5, 2007) ("Public Records such as Court Orders and Report and Recommendations are not special or legal mail."). The opening, and even inspection, of non-legal mail does not violate the Constitution.   *Cf. Wolff v. McDonnell*, 418 U.S. 539, 575-76 (1974) ("[F]reedom from censorship [of mail] is not equivalent to freedom from inspection or perusal."); *see also, e.g., Dickerson v. Chatman*, 2008 WL 4155624, at *3 (M.D. Ga. Sept. 5, 2008) ("In light of the fact that a prison has a legitimate security interest in opening and inspecting incoming mail for contraband, plaintiff's allegation that his *incoming* mail was opened and read but not censored does not rise to the level of a constitutional violation." (citing *Thornburgh v. Abbott,* 490 U.S. 410, 413-14 (1989); *Turner v. Safley*, 482 U.S. 78, 91-92 (1987)).   Thus, to state a viable First Amendment claim, a prisoner must allege that the

_____

perspective, we hold that an inmate's right of access to the courts supports the portion of the district court's order requiring that incoming prisoner mail from courts, attorneys, prosecuting attorneys, and probation or parole officers be opened only in the presence of the inmate.")).   As discussed above, however, access-to-courts claims require allegation of an "actual injury," and, in the absence of any such injury here, whether correspondence from the Court might constitute "legal mail" in that context is irrelevant.

correspondence at issue was properly "legal mail," *i.e.*, correspondence with his or her attorney.

Howard's allegations fail to state a First Amendment claim for two reasons. First, his allegations concerning the specific instances when his "legal mail" was opened allege that it was opened in his presence. *See* doc. 18 at 32. Moreover, even if he alleged that some mail was opened outside his presence, the mail in question appears to have been correspondence from the Court.[4] *See, e.g., id.* at 35-37. Since Howard

---

[4] One of the grievances Howard reproduces inquires about the retention of "legal mail" once it has been opened in the inmate's presence, copied, and the copy provided to the inmate. *See* doc. 18 at 34. Claims concerning the retention, as opposed to the opening or reading, of attorney mail are ambiguous. On the one hand, such retention might implicate the First Amendment concerns articulated in *Al-Amin*. *See* 511 F.3d at 1334 ("The issue thus is whether defendants' pattern and practice of opening (but not reading) Al-Amin's clearly marked attorney mail outside his presence sufficiently chills, inhibits, or interferes with Al-Amin's ability to speak, protest, and complain openly to his attorney so as to infringe his right to free speech."); *see also Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("The practice [of opening legal mail outside of an inmate's presence] deprives the expression of confidentiality and chills the inmates' protected expression, regardless of the state's good-faith protestations that it does not, and will not, read the content of the communications. This is so because the only way to ensure that mail is not read when opened is to require that it be done in the presence of the inmate to whom it is addressed." (internal quotation marks and citations omitted)). Those concerns do not appear diminished in any way by the retention of mail outside the inmate's presence after it has been opened. The practical consequence is the same: prison staff are in possession of unsealed attorney-client correspondence outside the inmate's presence.

On the other hand, it is equally clear that inmates' rights to maintain the privacy of their property while incarcerated is severely limited. The Sixth Circuit has held that allegations that prison officials "depriv[ed an inmate] of physical possession of one piece of legal mail while he was under suicide watch," was properly dismissed

pursuant to §§ 1915 and 1915A.  *See Carlton v. Jondreau*, 76 F. App'x 642, 642-43 (6th Cir. 2003).  The court specifically rejected the asserted First Amendment claim. *Id.* at 643 (noting that "[n]ot only was [plaintiff] permitted to view the contents of the letter upon receipt, but the prison acted pursuant to policy and with [a] legitimate penological objective . . . ."); *see also Troutman v. Cocke Cnty. Sheriff's Dept.*, 2010 WL 983901, at *2 (E.D. Tenn. Mar. 15, 2010) (rejecting a First Amendment claim based upon alleged seizure of legal mail, noting "[o]bviously, plaintiff had received his legal mail since it could not have been seized . . . unless he had it in his possession . . . .").  As another district court has observed, albeit in the context of a summary judgment argument, "prison officials routinely have possession of an inmate's legal mail before it is delivered, during inspections or transfers.  Possession alone does not raise an inference that the defendants acted improperly.  Absent some evidence establishing . . . that the defendants actually viewed [legal] communications outside [plaintiff's] presence, his claim fails as a matter of law."  *Mead v. Palmer*, 2016 WL 4775456, at *6 (N.D. Iowa Sept. 13, 2016).  Since Howard has not alleged that any of the "legal mail" at issue was correspondence with his attorney, the Court need not determine, at this time, whether the retention of such correspondence outside the inmate's presence violates the First Amendment.

The implication of any other constitutional right by a correctional institution's seizure and retention of legal mail is even murkier.  In *Hudson v. Palmer*, the Supreme Court held that "the Fourth Amendment proscription against unreasonable searches [and seizures] does not apply with the confines of the prison cell."  468 U.S. 517, 526 (1984); *see also id.* at 528 n. 8 ("[T]he same reasons that lead us to conclude that the Fourth Amendment's proscription against unreasonable searches is inapplicable in a prison cell, apply with controlling force to seizures.").  Another court, considering a claim that an inmate's rights were violated "when [corrections officers] seized his legal mail and kept it from his possession for a period of time," conceded it was "an interesting argument, [but] it is foreclosed by *Hudson*."  *Lund v. CDCR*, 2022 WL 3012219, at *6 (C.D. Cal. June 2, 2022); *see also Gutierrez v. Reyersbach*, 2023 WL 3254735, at *2 (E.D. Cal. May 4, 2023) ("Searches of a prisoner's possessions, including legal mail, do not implicate the Fourth Amendment.").  Still other courts have rejected claims that prisoners have a due-process-based property interest in "original legal mail."  *See Mayberry v. Dewyer*, 2022 WL 504525, at *3 (N.D. Ind. Feb. 17, 2022) ("[The Indiana Department of Corrections] has determined that an offender may not possess original legal mail, only copies.  Based on this, [plaintiff] cannot show a property interest in the originals."); *Cruse v. Mississippi Dept. of Corrs.*, 2018 WL 4053328, at *4 (N.D. Miss. Aug. 24, 2018) (rejecting due-process claim based on seizure of inmate's possessions, including legal mail); *Obataiye-Allah v. Clark*, 2014 WL 7240509, at *5 (W.D. Va. Dec. 18, 2014) (finding that prisoners "entitlement to possess personal property is always subject to the absolute discretion of [Department of Corrections] regulators, . . . , [so] plaintiff cannot establish a possessory interest in his personal

does not allege that correspondence with his attorney was opened outside his presence, he fails to state a First Amendment claim, but, as discussed below, he will have an opportunity to amend that claim. *See, e.g., Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) (Generally, when a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action.").

### V. Motion for Reconsideration

In addition to his Amended Complaint, Howard filed a Motion for Reconsideration of the Court's Order denying his request to appoint counsel and to intervene with the jail to secure him additional access to the law library and photocopying facilities. *See* doc. 17; *see also* doc. 10 at 3-4. The decision to grant a motion for reconsideration is at the discretion of the court. *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993). They are to be filed "only when 'absolutely necessary' where there is: (1) newly discovered

---

property ([including] . . . personal and legal mail . . . ) which is protected by the Due Process Clause."). Again, Howard's failure to allege that the mail at issue is "legal mail," in the relevant sense, obviates any need to consider the possibility of any such claim.

evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Murray v. ILG Techs., LLC*, 2019 WL 498849, at *1 (S.D. Ga. Feb. 8, 2019) (citing *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003)). Such motions are "not appropriate to present the Court with arguments already heard and dismissed, to repackage familiar arguments, or to show the Court how it 'could have done it better' the first time." *Id.* (citing *Pres. Endangered Areas of Cobb's History, Inc. v. United States Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), *aff'd*, 87 F.3d 1242 (11th Cir. 1996)).

Howard's Motion does not identify any defect in the Court's analysis of his request for appointed counsel. *See* doc. 17 at 2. As the Court's prior Order explained, "the key to assessing whether counsel should be appointed is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court." Doc. 10 at 3 (internal quotation marks and citations omitted). Despite the Court's determination, above, that Howard has failed to state a claim upon which relief can be granted, his pleadings are cogently and clearly presented. There is nothing in any of his pleadings that suggests he needs help to

present "the essential merits" of his case.  His request that the Court reconsider its Order denying appointment of counsel is **DENIED**.  Doc. 17, in part.

Howard's frustration with the administrative requirements imposed by Chatham County Detention Center to access the law library is understandable, even if it does not provide any basis for relief.  He objects that he "followed C.C.D.C. [r]ules," concerning access to the law library and copying facilities, but the Court "denied his right."  Doc. 17 at 2.  The Court's prior Order expressly acknowledged that "Howard is proceeding *pro se*," doc. 10 at 3, but that it lacked the authority to "order that his access to privileges be increased beyond what the detention facility deems adequate . . . ," *id.* at 4.  As it has done in similar situations in the past, the Court can only clarify that Howard is proceeding *pro se* in this case.  *Cf. Williams v. Wilcher*, CV418-141, doc. 12 (S.D. Ga. Sept. 4, 2018).  Regardless, the administrative difficulty that Howard has encountered does not provide any basis for the Court to reconsider its prior Order.  His request that the Court reconsider that Order, refusing to "order" the Detention Center to provide him with access to the law library and photocopying facilities, is **DENIED**.  Doc. 17, in part.

## V.    Conclusion

In summary, Howard's Amended Complaint fails to state a claim upon which relief may be granted based upon his claims that: (1) the commissary sells products not labeled for individual sale; (2) he was denied access to personal care products recommended by a physician; or (3) that his "legal mail," is opened in his presence and copied, but he is not permitted to retain the original correspondence.   Since neither the commissary nor personal-care-products claim appear amendable, they should be **DISMISSED**.   *See Jenkins*, 620 F. App'x at 711 ("[A] district court need not allow amendment if the amended complaint would still be subject to dismissal.").   Since Defendants Chatham County Detention Center and Oasis Commissary Services are not proper defendants, both should be **DISMISSED**.   His Motion for Reconsideration is **DENIED**. Doc. 17.

Howard is **DIRECTED** to submit a Second Amended Complaint concerning his allegations of improper treatment of his legal mail no later than July 10, 2023.   The Clerk is **DIRECTED** to send a blank copy of Form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)) with this Order and Report and Recommendation for Howard's convenience.

Howard is advised that this amended complaint will supersede his original pleading—that is, it will replace the original pleading entirely—and therefore must be complete in itself. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). Finally, Howard is advised that failure to submit his Amended Complaint timely may result in a recommendation of dismissal. Fed. R. Civ. P. 41(b).

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are

advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 9th day of June, 2023.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA